United States Courts
Southern District of Texas
F I L E D

AUG 26 2019

David J. Bradley, Clerk of Court

In the United States District Court
Southern District of Texas
Houston Division


Antonio Benjamin,
Petitioner,

Re: Case no. to be assigned
District Court Criminal Case
no. 4:17 CR 186-1
4:16 CR 186

Vs.

United States of America,
Respondent.

Memorandum in Support of
28 U.S.C. §2255

Comes now Antonio Benjamin unrepresented/pro-se and the Petitioner in the above captioned cause of action to set forth facts which support his petition pursuant 28 U.S.C. §2255.

Benjamin submits the following:

Statement of the case: (facts)

On March 7, 2016 a female named Chelsey Thomas attempted to enter a car operated by Benjamin. Because of a previous altercation where Thomas assaulted Benjamin he told her he was not going to allow her to enter his car just so she could hit him again. Benjamin let his foot off the brake and just as the car began to move Thomas grabbed for the rear door handle. When the door handle flipped up her fingers got lodged. At this same time the car was started in motion. The action propelled Thomas just for a second and in falling her hand came free of the door.

This act was completely the fault of Thomas as Benjamin, sitting in the driver's seat, had no way of seeing her grab the handle or fall.

In an act of embarrassment and retaliation Thomas decided to make a complaint to Police. After she filed alleging an assault by vehicle Thomas added, "by the way--Benjamin is also pimping a minor from [Such and such] high school." The F.B.I. was called and after a brief interview with the alleged minor victim filed a criminal complaint some 6 weeks later on April 21, 2016.

The complaint alleged the state crime that alleged the assault on Thomas. Since F.B.I. has no jurisdiction over an alleged simple assault case it is unclear why the F.B.I. investigated or included that state filing in his federal report.

The complaint alleged a violation of 18 U.S.C. §1591(a)(2) stating the means of force, fraud, coercian were used to cause a person under the age of 18 to engage in a commercial sex act and should be punished as provided in subsection (b).

The complaint filed, after F.B.I. investigation only alleged a single minor victim (MV1) and only one count alleging a single violation of sex trafficking. 18 U.S.C.§1591(a)(2).

On May 2, 2016 Benjamin was ordered detained and indictment was filed May 11, 2016. The indictment charged only one count of sex trafficking in violation of 18 U.S.C. §1591(a),(b)(1), and (2), and 2. Not two counts as incompetently stated in defense counsel's brief. On May 19, 2016 Benjamin pled not guilty in open court. Because he felt he never forced anybody to do anything he insisted to his counsel to plead him not guilty.

Mid July Benjamin retained new counsel who informed the AUSA that Benjamin would not accept a plea deal or sign a plea agreement. On November 16, 2016 the AUSA Superseded the indictment charging 2 fraudulent counts. Count two was now a new sex trafficking offense against a second minor (mv2). Same statute, 18 U.S.C. §1591(a), (b)(1) and (2), and (2). Count three charged a sex trafficking crime against an adult in violation of 1591 (a), (b)(1) and 2. No (b)(2) subsection is alleged in count three.

The AUSA only filed a superseding indictment when Benjamin refused to plead. On November 22, 2016 Benjamin again pleaded not guilty. On March 9, 2017 a third indictment was filed but merely made corrections to the SSI. Again, on March 16, 2017 Benjamin pleaded not guilty.

Counsel made attempts to get Banjamin to plead. But when the hearing was held on March 21, 2017 he still insisted he was not guilty of forcing anyone to do anything. The AUSA went on a tirade spewing threats to seek enhancements at sentencing if Benjamin failed to plead guilty. After the hearing the AUSA made a promise that the issues of force would be removed... that Benjamin is not pleading to force. On March 24, 2017 the AUSA had Benjamin sign the plea agreement and the court took his guilty plea on the terms promised by the AUSA.

A Presentence Report was prepared which stated allegations as facts. On September 15, 2017 Benjamin was given the draconian sentence of 30 years in federal prison.

Counsel for Benjamin filed an Ander's Brief on appeal which was granted on October 15, 2018.

The Law:

Title 18 of the United States Code, section 1591 reads:

    (a) whoever knowingly-

    (1) in or affecting interstate or foreign commerce,
or within the special maritime and territorial
jurisdiction of the United States, recruits,
entices, harbors, transports, provides, obtains,
advertises, maintains, patronizes, or solicits
by any means a person; or

    (2) benefits, financially or by receiving anything
of value, from participation in a venture which
has engaged in an act described in violation
of paragraph (1),

knowing, or in reckless disregard of the fact, that means
of force, threats of force, fraud, coercian described in
subsection (e)(2), or any combination of such means will
be used to cause the person to engage in a commercial sex
act, or that the person has not attained the age of 18 years
and will be caused to engage in a commercial sex act, shall
be punished as provided in subsection (b). 18 U.S.C. §1591(a).
Subsection (b) prescribes different mandatory minimum sentences
for sex trafficking of a child under age 14, or , sex trafficking
by force:

    (b) The punishment for an offense under subsection
(a) is - -

    (1) if the offense was effected by means of force,
threats of force, faud, or coercian described
in subsection (e)(2), or by any combination

of such means, or if the person recruited,
enticed, harbored, transported, provided,
obtained, advertised, patronized, or solicited
had not attained the age of 14 years at the
time of such offense, by a fine under this
title and imprisonment for any term of years
not less than 15 or for life; or

(2) if the offense was not so effected, and the
person recruited....had attained the age
of 14 years but had not attained the age
of 18 years at the time of such offense,
by a fine under this title and imprisonment
for not less than 10 years or for life. 18
U.S.C. §1591(b).

Title 18 U.S.C. §2241(a) and U.S.S.G.2A3.1(b)(1).

18 U.S.C. §2241(a) pertains to "whoever...knowingly causes
another person to engage in a sexual act (1) by using force
against that other person; or (2) by threatening or placing
that other person in fear that any person will be subjected
to...serious bodily injury." 18 U.S.C. 2241(a)(1)-(2). U.S.S.G.
§2A3.1(b)(1) provides for a four-level enhancement "if the
offense involved conduct described above in 2241."

18 U.S.C. §2426(b)(1)(A) or (B) the term "prior sex offense
conviction" means a conviction for an offense - under this chapter,
109A, 110, or section 1591, 2421, 2241, 2251.

U.S.S.G. §4B1.5(b)(1) n.4 two separate occasions defendant engaged in prohibited sexual conduct with a minor.

Benjamin seeks relief pursuant to 28 U.S.C. §2255. That section provides, as relevant here:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed, and the conviction obtained, in violation of the United States Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence, or constitutional error.

A petitioner who seeks to challenge a final conviction by collateral attack, can do so on constitutional or jurisdictional grounds. See United States v. Shaid, 937 F.2d 228, 233 (5th Circuit 1991)(enbanc).

Herein, Benjamin raises claims of prosecutorial Misconduct, Ineffective Assistance of Counsel (IAC), as well as the lack of Personal and/or subject-matter Jurisdiction of the United States Government and/or United States District Court.

Timliness:

As relevant here, Benjamin must file his §2255 motion within one year of his conviction becoming final. The United States Court of Appeals granted defense counsel's motion pursuant Anders vs. California, thereby denying the relief requested in Benjamin's pro-se brief, on October 15, 2018.

The time to file for a Writ of Ceriorari to the United States Supreme Court expired on January 14, 2019. The 2255 is therefore due by January 13, 2020.

This filing on August   , 2019 is well within that timeframe and deemed timely.

Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under §2255 is subject to the two-prong analysis articulated in Strick-land v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), United States v. Grammas, 376 F.3d 433,436 (5th Cir. 2004). To establish ineffective assistance, Benjamin will show: 1) that defense counsel's performance was deficient; and 2) that the deficient performance prejudiced him.

Benjamin will show that counsel's performance fell below an objective standard of reasonableness. See United States v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).

Prejudice will be established by showing there is a reasonable probability the results of the proceedings should have been different. Strickland, 466 U.S. at 694.

Benjamin was entitled to effective assistance of counsel at all stages of the criminal trial process, including the

sentencing phase. Benjamin only need show that counsel's ineffective assistance resulted in any additional incarceration. See Ranson v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997); Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (noting that "any amount of jail time has Sixth Amendment significance.").

A court may entertain and decide a §2255 motion without requiring the production of the prisoner at a hearing. Further, a district court may deny a §2255 motion without an evidentiary hearing "only if the motion, files, and records of the case conclusively show the prisoner is entitled to no relief." See United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992).

The facts herein, supported by the record, however, do show that Benjamin, without a doubt, is entitled to the relief he seeks. There are no "bald assertions" nor any conclusory statements. All facts are strictly from the record, accept where rebuttal is required. All matters of law derive solely from the writings of Fifth Circuit Court of Appeals justices and those of the Supreme Court.

Prosecutorial Misconduct

Federal Courts apply "a two-step analysis to charges of prosecutorial misconduct." See United States v. Duffaut, 314 F.3d 203, 210 (5th Cir. 2002). A court first decides whether the prosecutor's actions were improper and, if so, the court then determines whether the actions "prejudiced the defendant's substantive rights." Id. With respect to that latter determination,

the court asks whether the prosecutor's actions "so infected
the trial with unfairness as to make the resulting conviction
a denial of due process." See Darden v. Wainwright, 477 U.S.
168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

"A trial is fundamentally unfair if there is a reasonable
probability that the verdict might have been different had the
trial been properly conducted." See Foy v. Donnelly, 959 F.2d
1307, 1317 (5th Cir. 1992). Therefore, "the touchstone of due
process analysis in cases of alleged prosecutorial misconduct
is the fairness of the trial, not the culpability of the prosecutor."
Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d
78 (1982).

In the instant case the subject of fairness is within the
change of plea and its proceedings and not a trial issue.

Argument

Benjamin claims his Appellate counsel was ineffective for
precisely many of the same reasons trial counsel was ineffective.
Benjamin claims the AUSA is guilty of prosecutorial misconduct,
retaliation, and reneging on her implied promises.

Because he is representing himself pro-se in this proceeding,
Benjamin is entitled to the deference normally afforded to pro-
se litigants. In pro-se cases the Court is required to construe
allegations liberally, to ensure that a pro-se's claims are
given fair and meaningful consideration, despite unfamiliarity
with the law. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct.
594, 30 L.Ed.2d 652 (1972).

In the instant 2255 Benjamin raises the following constit-

utional violations: 1) The AUSA maliciously superseded the indictment
when he failed to enter into a plea deal; 2) Counsel was ineffective
for not raising this issue; 3) There was insufficient evidence
to prosecute counts two and three of the superseding indictment
(SSI); 4) Counsel was ineffective for not raising this issue;
5) Benjamin's guilty plea was involuntary, unknowing, and
unintelligent; 6) Counsel was ineffective for not withdrawing
the plea; 7) The AUSA made threats at the first plea hearing
to cause fear and intimidation; 8) Counsel was ineffective for
sitting on his hands; 9) the AUSA's words at the plea hearings
implied a different outcome at sentencing therby inducing the
guilty plea; 10) There was no basis or evidence to support sent-
encing enhancements offered at sentencing to allow for obstruction
of justice, pattern of conduct, applying  2241(a); 11) the district
court failed to calculate the guidelines;  12) the district court
failed to mention, muchless consider, the factors of 3553(a)
thus making the guidelines mandatory.

#1 After Benjamin was indicted for one count of sex trafficking
a minor he was approached by counsel who communicated a proposed
plea agreement. Benjamin maintained his innocence and told counsel
he wanted a trial.

The AUSA retaliated by filing a superseding indictment
(SSI). The new indictment now accused Benjamin of sex trafficking
a different minor in count two, and  an adult female in count
three.

Although a prosecutor may in the course of plea negotiations
offer a defendant concessions relating to prosecution under

an existing indictment, she may not threaten a defendant with
the consequence that more severe charges may be brought if he
insists on going to trial.

The retaliation is evident in that all the information
the AUSA put into the SSI was already known to her at the time
she prepared the first original indictment to the Grand Jury.
Second, there was no probable cause and there was insufficient
evidence to charge the two extra counts of sex trafficking.

The F.B.I., by Special Agent Theo Williams, investigated
Benjamin after a report from Houston, Texas Police Department.
S.A. Williams filed a Federal Criminal Complaint on April 21,
2016. In that complaint the Agent only raises alleged criminal
conduct against MV1. Nothing is mentioned about a MV2 or the
original complainant to HPD, Chelsey Thomas being abused or
trafficked.

The Presentence Report filed September 11, 2017 runs at
length for five full pages of conduct/behavior all derived from
the F.B.I. and HPD. See PSR pg 4 of 27 at #7: ("Information
for this section of the report was obtained through review
of the investigative files of the ... F.B.I and the HPD...").

A review of the PSR lists dates of investigations: 1) March
9, 2016 officers interviewed Chelsey Thomas; 2) On April 5,
2016 HPD officers interviewed MV1; 3) On April 6, 2016 "F.B.I.
agents interviewed MV1 as part of the investigation"; 4) On
April 11, 2016 agents interviewed MV2; 5) On April 19, 2016
Benjamin was arrested by HPD officers for assault; 6) beginning
December 2014 and continuing through March 2016 Benjamin was
involved in recruiting women and girls..; and, 7) On April 21,

2016 S.A. Williams filed the Criminal Complaint which was signed by U.S. Magistrate Nancy K. Johnson.

These facts show that the AUSA was aware of the investigative reports at the time she filed for indictment. The information in the superseding indictment was on the table of the AUSA at the time of the original indictment. There are no allegations in the SSI that was not available at the time of the original indictment.

The allegations in the SSI are without sufficient evidence. The AUSA merely filed the counts as a scare tactic to get Benjamin to plead out and in retaliation for not pleading beforehand.

Count two: (Sex Trafficking) ...Knowingly recruited, enticed ...any person...MV2...who was between 14 and 18 yrs. old... and benefitted financially...knowing in reckless disregard of the fact that: (1) means of force, threats of force, fraud, and coercian...would be used to cause MV2 to engage in commercial / sex act, and;  (2) that MV2 had not attained 18 and would be caused to engage in a commercial sex act; inviolation of 18 U.S.C. §1591(a), (b)(1) and (2)... In order to bring Count two the AUSA must possess probable cause that Benjamin has committed, and is probably guilty of, each element of the statute charged.

There is no evidence in the record to support the allegation that Benjamin used force, fraud or coercian to cause MV2 to engage in a commercial sex act. In fact, there is no evidence MV2 ever engaged in a commercial sex act or that she would ever be in a commercial sex act.

The AUSA states at the rearraignment of 03/24/2017 pg 20 lines 22 and 23: "she [MV2] also stated that he "solicited"

(12)

her to engage in commercial sex but she refused."

The F.B.I. report of 04/11/2016 states MV2 was asked but
said no. Solicit means to ask or to request.

The evidence is plain. MV2 did not engage in commercial
sex. Benjamin did not use force...he did not make any threats.
The facts of the case are plain.

Count three involved an adult so therefore the statute
alleged was 1591(b)(1) not (b)(2). The AUSA was required, then,
to show Benjamin caused Chelsey Thomas to engage in commercial
sex by means of force.

The investigative reports, and the AUSA freely admit, that
C.T. was "involved" in prostitution of her own accord. That
she and Benjamin were partners. Any assaultive behavior was
that from a combative relationship ongoing, for over a year
as the report reflects.

Because there was insufficient evidence to indict on counts
2 and 3 the SSI was vindictive and retaliatory. Because any
so-called information the AUSA used to supersed the indictment
was already on her desk at the time of the original indictment,
the filing of the SSI is also shown to be retaliatory. Because
of the AUSA's tirade of threats at the first rearraignment of
03/21/2016 (discussed more fully below) Benjamin has made a
a sufficient showing that the AUSA's filing of the SSI was in
retaliation for Benjamin insisting he was not guilty of forcing
anybody to do anything.

These facts also point to defense counsel's ineffectiveness.
These facts were readily available to counsel had he only performed
the most miniscule of investigations. Counsel's only interest

(13)

was for Benjamin to plead out beseeching him many times to just
plead guilty.

Benjamin's guilty plea was unknowing, unvoluntary, and
unintelligent. Therefore he has the absolute right to withdraw
his guilty plea. First and Formost, counsel was ineffective
in his advice to enter into the negotiations and advise Benjamin
to plead guilty to counts one and two. As stated above, there
was insufficient evidence to prove guilt beyond a reasonable
doubt to an unanomous jury of 12. Especially in regards to count
2 and 3.

The plea was rendered involuntary where the AUSA made threats
to induce the plea, then made  promises which she reneged on
at sentencing.

The facts in the record reflect the following:

The SSI filed by the AUSA charges violations of 18 U.S.C.
§1591(a), (b)(1) and (b)(2) on counts one and two for alleged
conduct against two different minors; 18 U.S.C. §1591(a) and
(b)(1) for alleged conduct against an adult female Chelsey Thomas
(CT). It is important to note the original indictment alleged
the same statutory violations in the one count indictment.

The crux of the argument is that statutory difference in
(b)(1) and (b)(2).

Subsection (b) prescribes different mandatory minimum sentence
for sex trafficking a minor between the ages of fourteen and
eighteen, sex trafficking a minor under age 14, or sex trafficking
by force: (1) if the offense was effected by means of force,
threats of force, fraud, or coercian described in subsection

(14)

(e)(2), or by any combination of such means, or if the person
recruited, enticed, harbored, transported, provided, obtained,
advertised, patronized, or solicited had not attained the age
of 14 years at the time of such offense, by a fine under this
title and imprisonment for any term of years not less than 15
or for life; or

(2) if the offense was not so effected [by force], and the person
recruited, enticed, harbored, transported, provided, obtained,
advertised, patronized, or solicited had attained the age of
14 years but had not attained the age of 18 years at the time
of such offense, by a fine under this title and imprisonment
for not less than 10 years or for life...

In short, the AUSA was charging (b)(2) for causing minor(s)
to engage in commercial sex act, and (b)(1) for trafficking
these minors through force, fraud, or coercian.

The government in the case United States v. Keys, 747 Fed.
APPX.198 (5th Cir. 2018) maintained that subsections (b)(1)
and (b)(2) enumerate two separate crimes which contain different
elements. The court then declared; "In short, the history of
the statute supports construing subsections (b)(1) and (b)(2)
as distinct crimes that can be chargd separetaly."

The United States Supreme Court has indicated that the
failure to fulfill a promise contained in a plea agreement [or
at the change of plea hearing] constitutes grounds for Benjamin
to attack his conviction or sentence. See Machibroda v. United
States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Mempa
v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967);
Blackledge v. Allison, 52 L.Ed.2d 136 (1977).

These courts made rulings such as: "a guilty plea if induced by promises or threats...is void." "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," "the critical question is whether the prisoner's allegations, when viewed against the record of the plea hearing...."

At a pretrial conference on March 17, 2017 defense counsel informs the judge - "maybe we can resolve the case if we can have until monday." Then on March 21, 2017 defense counsel has to inform the court that there is no deal as Benjamin had second thoughts. He then states he wants it on the record he advised benefits of a plea. He had told Benjamin a plea would move the mandatory minimum to 10 years from 15 years and he has a chance at less than 15. He also advised he'd get 3 points off for acceptance of responsibility and if he did not plead "he is going to get the potential for other enhancements..." He told Benjamin the government was willing to drop count three, which could hurt him in long run.

The Court states a plea bargain is out there you can accept and plead guilty or you could say no - do you want to plead guilty or not? Benjamin states, "I would like to go to trial." He wanted to tell the court "because I did not force anyone to do anything and there is nothing in the record which reflects force was used to get the girl(s) to go on a date on any given night."

But before he has a chance to continue, the AUSA lashed out with a tirade of threats... "I want it made 'very clear'

that if he goes to trial, that <u>at sentencing</u>, the United States
will be seeking 'all of the possible enhancements' and 'all
of this...[whatever "this" is?]."

   She continues with: "there will be no excuse for his reason/
choice to go to trial...once he is adjudicated guilty by a jury.
that 's it...game over and the court will not consider his reasons
to go to trial...it's game over...we will go forward with other
charges such as the forced, <u>fraud</u> or coercian counts...and he'll
be sentenced for these counts which will raise his offense level.
Note: The Probation officer in his PSR states at #81 "had he
been convicted of all 3 counts the Guideline Range would be the
same."

   The AUSA continues on with: "there will be no acceptance
of responsibility. We'll consider obstruction and other enhancements
<u>which won't apply if he takes the plea deal."</u>

   The judge reinforces the statements/assurances of the
AUSA by stating, "if you go to trial if the Jury finds you
guilty [at least the court says "if"] you would face 'all of
<u>the consequences</u> of being found guilty," this plea bargin gives
you certain breaks [no enhancements] you have to plead guilty
to get those breaks."

   Before the next hearing took place on March 24, 2017 Counsel
told Benjamin that the AUSA took the "force" issue "off the
table." That if he pleads guilty to sex trafficking there would
be no charge alleging force or fraud or coercian. He further
told Benjamin the AUSA would not seek enhancements...no obstruction
...no sentence on the element in (b)(1) of force. He would
be eligible for the minimum sentence of 10 years. Benjamin

agreed to sign a plea agreement to those effects and with that agreement/promise of the AUSA he would go against his better judgment and plead guilty.

At this change of plea hearing the AUSA stated she wants to make it very very clear on the record "and for purposes of sentencing" that the provision Benjamin is pleading to is "NOT" the provision that contemplates force, fraud or coercian... She states again she wants it to be very clear he is not pleading to any force, fraud or coercian. Defense counsel then tells the court "that is part of the considerations in the plea deal that they [AUSA] did that."

The Court then describes the elements of 1591(a) and leaves out all mention of force, fraud, or coercian. There was no mention of Chelsey Thomas or elements or conduct alleged in count 3.

This record is free from any obscurity or ambiguity as to Benjamin's understanding in exactly what the AUSA's promises and assurances were. If Benjamin would cease in his persistence on going to trial and plead only to sex trafficking of the minors he would be considered for a sentence of 10 years. Also there would be no issues of force or obstruction or other enhancements at sentencing. He would also get 3 points taken off his offense level for accepting responsibility for the conduct the AUSA alleged.

The Plea Agreement signed on the same day as the change of plea hearing March 24, 2017 contracts the following:

     i) Benjamin will plead to violating statute 18

U.S.C. §1591(a) and (b)(2). The charge of (b)(1)
[the force issues] was in the indictment and was
removed from the plea.

2) The statutory punishment range is no less than
10. (No less than 15 was removed from the plea).

3) the facts establishing guilt are now minus any
mention of force, violence or coercian. Stated
MV2 stripped in clubs and said no to prostituting.
There is a statement where MV2 said there would
be consequences but no mention of what "consequences"
entails. There was also mention of being punched
in the chest but no mention that this punch was
in connection to any consequence, or if it was
done in horseplay. There was mention MV2 was
being groomed...says who? No evidentiary support
just conclusory statements. There is no mention
of MV1 or MV2 witnessing any violence, no
mention of Chelsey Thomas and that combative
partnership (count three).

In short, Benjamin signed a plea agreement negotiated
on the condition that Benjamin admits no allegation of force.
He pled guilty on the premise and on the promise/assurance
that he is not admitting to force.

The AUSA's own words at the change of plea hearing made
it "very, very clear" that she is not alleging force and Benjamin
is not admitting force.

In determining whether an agreement's terms were breached
the court must apply an objective standard and must decide
whether the goverment's actions are inconsistent with what
the defendant reasonably understood when he entered his guilty
plea. See United States v. Copeland, 381 F.3d 1101 (11th Cir.
2004).

The written agreement should be viewed against the background
of the negotiations and should not be interpreted to directly
contradict an oral understanding.

The AUSA breached the oral assurances at the change of
plea hearing when she filed her statement to Probation regarding
the offense of conviction. She again violated the agreement
at sentencing.

At the plea hearing the AUSA stated enhancements would
apply at sentencing "if he did not plead." At sentencing the
AUSA was fully prepared to argue for every enhancement she
could dream up. Defense Counsel even stated, "all of these
enhancements are piling up."

When the AUSA is asked to speak she immediately begins
talking of violence and force so she can persuade the court
to grant the enhancements she promised not to ask for.

She begins on pg. 12 of the transcript: "as to the violence...
you can't separate that violence and say it's domestic and
don't apply when the minors witnessed the violence and that
influenced her being manipulated. This woman was dragged by
a car, she was choked twice and this was caused by Benjamin..."

So right away she argues for the court to see the violence
and force Benjamin "allegedly" applied. This violates her agree-
ment. Also none of what she implies was ever proven in court
to a jury and none of it admitted. There was no witness to
testify to these allegations, no cross examinations. These
were words not taken word for word from a police report but
an adult female filed in a fit of anger.

Next the AUSA states Benjamin is a "repeat and dangerous"

sex offender because MV1 prostituted more than one time in
the month of March. MV1 was 'forced' to engage in commercial
sex repeatedly. If that is true then why drop the statute she
charged in the indictment alleging force in (b)(1)? Again she
has violated the plea deal to drop  the "force" allegation.

Next she says Benjamin effectively "raped" MV2. Again,
only an allegation in a police report. No convictions, no
findings, yet the AUSA characterizes Benjamin guilty of conduct
he was never charged with, never had put to a jury, never pleaded
guilty to. So the AUSA states the allegation qualifies him
as "absolutely a repeat and dangerous sex offender pg. 13 lines
17 & 18." Next she tries to lay blame on probation by saying,
"we stand by probation's responses..." But "probation's response"
are merely a mirror image of the AUSA's offense conduct she
wanted considered at sentencing. She stated, "these enhancements
apply."

With no proof of anything the Court denies defense counsel's
objection. There wasn't even a preponderance of evidence. The
BOP has the most lax standard in the world of "some evidence"
and this court did not even pass that muster. The Court merely
acquisienced the AUSA as they do 98% of the time.

Defense counsel next objects to the application of U.S.C.
§2241 being applied.

The AUSA directly interjects blaming the PSR again, pg.
15 lines 23-25, yet they are her words from the PSR. She states
he did engage in a pattern of behavior that constitutes enhancements
of 2A1.3. She states again that abuse caused MV1 to do commercial

sex. "She was forced to do that." "Physically forced." "Forced psychologically." "Fear of physical reprisal." "Which he visited upon her and done to others." "He forced her to have sex with him." "that is force." "he is going to have to answer for that."

The Court again overrules the objection with no evidence, only conclusory allegations, no witness,no cooroboration. The AUSA exaggerated and even worded the police reports in a way that one thought they were facts already proven.

Defense Counsel failed to alert the court to any of this or object to the AUSA's breach of the plea deal.

Benjamin argues that his sentence increase violated the Sixth Amendment because it was based on false facts relating to force issues that the Government did not prove to a jury, and argued for in breach of the plea deal, and he did not admit.

The government can breach a plea deal by making statements regarding the PSI that are inconsistent with the plea deal. see United States vs. Condon. 2010 U.S. Appx. LEXIS 7472 (11th Cir.).

The government is bound by any material promise it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty. United States v. Taylor, 77 F.3d 368. 370 (11th Cir. 1996). Whether a plea deal is violated is determined according to the defendant's reasonable understanding when he entered the plea. See United States v. Horsfall. 552 F.3d 1275. 1281 (11th Cir. 2008). See also United States v. Reeves. 255 F.3d 208. 210 (5th Cir. 2001). Accord: United States v. Saling. 205 F.3d 764. 766 (5th Cir. 2000).

Where the government breaches a plea agreement the defendant has the option to either withdraw his plea, or to enforce specific performance by having resentencing before a different judge. Saling, 205 F.3d at 767-68 (5th Cir. 2000); United States v. Palomo. 998 F.2d 253. 256 (5th Cir. 1993). See also Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Here, Benjamin has consistently denied force and requires specific performance...to be sentenced without enhancements.

The AUSA has without a doubt breached the plea deal which took place in light of Benjamin's insistence on going to trial to challenge any accusation of force. The record could not be more clear and plain.

The District Court granted enhancements with no basis in fact and no evidentiary support. The government did not call any witnesses and merely relied on statements from a police report. Probation relied on these same reports and the words of the AUSA.

The Court even states the "evidence" she relied on was: pg. 38 lines 13 - "The investigation revealed that..." The Court took all of its 'Facts' from an investigative report. Benjamin acknowledges reliable hearsay may be used in the determination of a sentence. However, that evidence relied upon by the Court lacks the minimal indicia of reliability required by the Sentencing Guidelines. These enhancements were based solely on unsworn allegations made by Benjamin's disgruntled girlfriend and two minors. There was no sworn affidavits in support of their allegations. Neither Probation nor AUSA interviewed

Case 4:19-cv-03239   Document 2   Filed on 08/26/19 in TXSD   Page 24 of 27

any witnesses which is admitted in the record. Therefore, neither
had the opportunity to observe any demeanor to form an opinion
on veracity. The record, moreover, contains no evidence that
corroborates the account given by the preparing officer. The
girlfriends unsworn allegations and those of the minors, therefore,
stand as the only evidence of violence or force upon which
any enhancement could be based. The Sentencing Guidelines do
not require a high threshold of reliability, but more is required
than was presented to this court. Furthermore, no police reports,
no FBI reports, not even a summary of any reports was entered
into the record. Therefore no opportunity existed to present
a challenge.

The District Court failed to correctly calculate the Guide-
lines or point any aspect of sentencing to the factors enumerated
in 18 U.S.C. §3553(a). There was no basis for enhancements.

U.S.S.G. §2A3.1, Application Note 1 provides, in relevant part:

> "the means set forth in 18 U.S.C. §2241(a) or
> (b)" are: by using force against the victim;
> by threatening or placing the victim in fear
> that any person will be subject to death, serious
> bodily injury, or kidnapping; by rendering the
> victim unconcious; or by administering force or
> threat of force....

Besides the fact that the AUSA promised to remove the
"force" accusations the only evidence in the record arguably
connoting use of force at the time of the offense was police
and FBI reports where complainants told of altercations, consequences
and getting a hand stuck in a door handle...nowhere do any

of the reports tie in any violence or force with being made
to prostitute. In fact the only time MV1 stated she felt forced
to have to do prostitution was when she mentioned she was kicked
out of her home and had to support herself in some manner so
she forced herself into prostitution out of need to survive.
Not need to perform at the direction of Benjamin.

There is nothing in the record that shows Benjamin on
purpose laced MV2's cigarette with a drug to render her unconcious
so he can have sex with her. That's just the AUSA's sayso that
occurred. The guidelines contemplate some evidence of the use
of force as an affirmative matter. Here, all we have is guesswork
and assupmtion.

As for Obstruction of Justice the Court never made any
mention of this enhancement. Therefore, there was no findings
and this  enhancement must be striken.

Likewise with a pattern of activity or being a repeat
and dangerouse sex offender, the Court made no findings. There
is nothing in the record to support such an enhancement.

The court begins the sentencing proceedings not with a
mention of the Guidelines or statutory law regarding imprisonment,
but with asking defense his objections to the PSR.

The first time the Court alludes to the Guidelines is on
page 26 where she states she adopts the PSR as her own both
as to the findings of fact and the application of the guidelines
as to those "facts." She finds a total offense level of 42
and criminal history category of III for a guideline range
of 360 to life.

Defense Counsel states many times - this is horrific punish-
ment...it is severe, very severe, it is severe, very Draconian.
The Court sentenced Benjamin to "<u>30</u>" years in a federal prison.

District Courts must "begin" their sentencing analysis
with the Guidelines in effect at the time of the offense and
use them to calculate the sentencing range correctly. Failure
to do so results in a procedurally unreasonable sentence. See
Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 591,
169 L.Ed.2d 445 (2007). In reviewing the procedural reasonableness
of a sentence, the circuit court of appeals for the Fifth Circuit
considers whether the district court committed any significant
procedural error, such as failing to calculate or improperly
calculating the advisory guidelines range, treating the guide-
lines as mandatory, failing to consider the 18 U.S.C. § 3553(a)
sentencing factors, selecting a sentence based on clearly erron-
eous facts, or failing to explain adequately the chosen sentence.
Gall, 552 U.S. at 51. 128 S.Ct. at 597.

The Guidelines are just one factor among many to be balanced
against six other statutory sentencing factors. 18 U.S.C. §3553(a).
District Courts commit reversable error if they treat the guide-
lines as mandatory, and they cannot presume that a sentence
within the applicable Guidelines range is reasonable. See United
States vs. Matchette, 837 F.3d 1118 (11th Cir. 2016).

The sentencing Court never mentioned 3553 one time. It
never so much as implied any of the 3553(a) factors were considered.
The only mention of 3553 in the PSR is the very last paragraph
where Probation states he knows of nothing under 3553 that
would warrant a sentence outside the guidelines. This, too,
is insufficient.

(26)

The Guidelines were given without pointing to which "facts" supported which enhancement, what evidence passed the preponderance standard or even that preponderance was the standard.

The sentence was procedurally and substantively unreasonable. The sentence must therefore be vacated.

For the reasons stated above Benjamin first would request his sentence be vacated and that he be remanded to a different District Court Judge with instructions that Benjamin be sentenced without any reference to the issue of force...including 2241 of Title 18, to compel specific performance of the AUSA promises and assurances during the plea stages.

These same enhancements fail also under an abuse of discretion standard at the sentencing hearing.

Benjamin would also argue his criminal history score over represents the seriousness of his past offenses.

Even where the criminal history score would stand Benjamin's offense level would be 27 after a 3 point reduction for the promised Acceptance of Responsibility by the AUSA. TOL of 27 with a criminal history score of III gives a guideline range of 87-108 months. Because there is a ten year minimum, that would become the correctly calculated range. Benjamin requests a sentence of 120 months.

Dated: August 9, 2019

Respectfully Submitted,

Antonio Benjamin 12360-479
Federal Correctional Complex
Post Office Box 5000
Yazoo City, Ms. 39194
Unrepresented/ Pro-se

cc) File